UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| SAMUEL BERKOWITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-10483-DJC |
| | ) | |
| BONNIE BERKOWITZ, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.** March 9, 2012

**I. Introduction**

Plaintiff Samuel Berkowitz ("Samuel") brings this action against his daughter, Defendant Bonnie Berkowitz ("Bonnie") for breach of fiduciary duty. Bonnie has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is DENIED.

**II. Burden of Proof and Standard of Review**

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)). As the First Circuit has stated, "[i]n resolving a motion to dismiss, a court should employ a two-pronged approach." Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011) (applying Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009) and Twombly, 550 U.S. at 555). "Step one: isolate and ignore statements in the complaint that simply

offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., __ F.3d __, 2012 WL 414264, at *4 (1st Cir. February 10, 2012). "Step two: take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. If they do, "the claim has facial plausibility" and can withstand a motion to dismiss. Ocasio–Hernández, 640 F.3d at 12 (quoting Iqbal, 129 S.Ct. at 1949).

### III. Factual Allegations

Samuel was diagnosed with cancer in 1995. Complaint, D. 1 at ¶ 6. On June 5, 1998, after roughly three years of surgery and therapy, he gave a general power of attorney to Bonnie. D. 1 at ¶¶ 6-7. He told Bonnie that, if he were to die, Bonnie was to "take care" of both Barbara Berkowitz ("Barbara"), Bonnie's mother and Samuel's estranged wife, and Brian Berkowitz ("Brian"), Bonnie's brother and Samuel's son. D. 1 at ¶¶ 7, 9.

Nearly a year later, on May 13, 1999, Samuel conveyed his interest in a series of real estate parcels in Chelsea to Barbara and Bonnie. D. 1 at ¶ 8. Samuel alleges that he gave Bonnie express oral instructions that, if he were to die, she was to use the value of the Chelsea properties to "take care" of Barbara as necessary during her lifetime and was to share any remaining value with Brian. D. 1 at ¶ 8. Samuel characterizes this as "an express oral trust for the benefit of the mother for life, with the remainder for [Bonnie]'s brother and [Bonnie]," and asserts that he "has never repudiated this express oral trust." D. 1 at ¶ 8. At a point in time not specified in the complaint, Samuel learned that Bonnie sold the Chelsea properties for $1.7 million. D. 1. at ¶ 17.

On August 9, 1999, Barbara opened a joint account in her name and in Samuel's name at the brokerage firm of Legg Mason ("Samuel/Barbara Account"). D. 1 at ¶ 9. Samuel described his and Barbara's relationship to the Samuel/Barbara Account as "joint tenants with the right of

2

survivorship." D. 1 at ¶ 9. Samuel did not participate in opening the Samuel/Barbara Account and alleges that Barbara forged his name in order to open the account. D. 1 at ¶ 9.

That same day, Barbara signed her name and allegedly allowed Samuel's name to be forged on documents that authorized the transfer into the Samuel/Barbara Account of a number of securities that Barbara and Samuel held in joint accounts at three different firms: Prudential Securities, Solomon Smith Barney and Morgan Stanley Dean Witter. D. 1 at ¶¶ 10-12. The Prudential Securities securities were transferred into the Samuel/Barbara Account later that month and shortly thereafter were transferred into a separate account with Legg Mason that had been jointly opened by Barbara and Bonnie ("Barbara/Bonnie Account"), D. 1 at ¶¶ 10, 13. The Solomon Smith Barney securities were transferred into the Samuel/Barbara Account in February 2000 and shortly thereafter were transferred into the Barbara/Bonnie Account, D. 1 at ¶ 11. The Morgan Stanley Dean Witter securities were transferred into the Samuel/Barbara Account in May 2000 and shortly thereafter were transferred into the Barbara/Bonnie Account. D. 1 at ¶ 12. The total value of the securities transferred into the Samuel/Barbara Account and then to the Barbara/Bonnie Account exceeded $1 million. D. 1 at ¶ 17.

In 2002, Samuel learned of the transfers made into the Samuel/Barbara Account and the transfers from that account to the Barbara/Bonnie Account. D. 1 at ¶ 14. Samuel asserts that he "acquiesced" to these transfers because he "believ[ed] they were initiated by [Bonnie] in furtherance of his wishes expressed in the oral trust agreement made with [Bonnie]" - that is, "if he were to die, [Bonnie] should take care of [Barbara] for life, with the remainder to [Bonnie] and [Brian]" - and "pursuant to the power of attorney given to Bonnie in furtherance of same." D. 1 at ¶ 14.

In August 2003, Samuel filed for divorce from Barbara. D. 1 at ¶ 15. Bonnie and Samuel have not had any direct communication since he filed for divorce from Barbara. D. 1 at ¶ 16.

Nearly five years later, Samuel (via counsel) sent a letter dated June 13, 2008 to Bonnie asking for an accounting for the proceeds from the sale of the Chelsea properties and for the securities that were transferred to the Samuel/Barbara and Barbara/Bonnie Accounts. D. 1 at ¶ 18. On June 20, 2008, Bonnie (via counsel) repudiated holding any assets in trust for Samuel. D. 1 at ¶ 19.

## IV. Procedural History

On March 22, 2011, Samuel filed a verified complaint against Bonnie alleging one count of breach of fiduciary duty, alleging further that Samuel has sustained damages by way of the loss of property and securities, and seeking as relief: 1) a declaration that Bonnie is a trustee for Samuel's benefit, 2) an order compelling Bonnie to provide Samuel with an accounting for the proceeds from the sale of the Chelsea properties and for the securities that were transferred to the Samuel/Barbara and Barbara/Bonnie Accounts, and 3) "damages to the extent damages have been sustained." D. 1 at 6.

On April 25, 2011, Bonnie moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), alleging that the complaint failed to state a prima facie claim upon which relief could be granted and that the asserted claim was barred both by the relevant state statute of limitations and the statute of frauds. Attached to her memo in support of the motion, D. 7, Bonnie submitted numerous documents: 1) a series of excerpts from a July 19, 2004 deposition of Samuel that Bonnie asserts was taken as part of Samuel and Barbara's divorce proceedings, D. 7-1; 2) a quitclaim deed apparently registered with the Suffolk County registrar of deeds on June 1, 1999 and showing transfer from Samuel to Barbara and Bonnie of "undivided interests as Tenants in Common, with Q[uitclaim] C[ovenants]" in two parcels of land in Chelsea, D. 7-2; 3) a quitclaim deed apparently registered with the Suffolk County registrar of deeds on June 1, 1999 and showing transfer from

4

Samuel to Barbara and Bonnie of "undivided interests as Tenants in Common, with Q[uitclaim] C[ovenants]," in three additional parcels of land in Chelsea, D. 7-3; 4) a letter dated June 28, 1999, from Robert M. McCarthy to Barbara appraising the value of three of the aforementioned parcels at a collective value of $1.2 million, D. 7-4; 5) a list of documents apparently produced by Samuel during his divorce proceeding, showing that he produced (among other items) his 1999 Gift Tax Return, D. 7-5;6) a copy of Samuel's 1999 Gift Tax Return, showing gifts of $600,000 worth of real estate to Bonnie and Barbara, D. 7-6; 7) a letter dated August 27, 1999, and apparently signed by both Samuel and Barbara, authorizing Legg Mason to transfer all assets in the Samuel/Barbara Mason Account into the Barbara/Bonnie Account, D. 7-7; 8) an excerpt from an undated transcript of what appears to be deposition testimony by Samuel discussing his discovery of the transfer of securities into the Samuel/Barbara Account and thence into the Barbara/Bonnie Account, D. 7-8; and 9) an excerpt from an undated transcript of what appears to be deposition testimony by Samuel discussing his medical history, D. 7-9. The documents, with the exception of the excerpts from transcripts of deposition testimony, are tagged with what appear to be "exhibit" stickers. See, e.g., D. 7-2 at 2, D. 7-3 at 2, D. 7-4 at 2, D. 7-5 at 2, D. 7-6 at 2, D. 7-7 at 2. During oral argument before this Court, counsel for Bonnie asserted that these documents were filed as exhibits in the divorce proceedings between Samuel and Bonnie before those proceedings settled during the first day of trial; at the same hearing, Samuel's counsel stated that he was not sure that a trial actually took place in the divorce proceeding and questioned whether the documents were admitted in state court. See also D. 11 at 4 n. 1.

On May 19, 2011, Samuel filed his opposition to Bonnie's motion. D. 11. Attached to his opposition to the motion to dismiss, Samuel submitted one undated excerpt from what appears to be deposition testimony by Barbara, presumably in connection with Samuel and Barbara's divorce

5

proceeding, and two undated excerpts from what appears to be deposition testimony by Samuel, again presumably in connection with the divorce proceeding. D. 11-1 at 2, 4, 6. Although the transcripts are undated, Samuel asserts that his deposition was taken on August 5, 2004 and that Barbara's deposition was taken on April 14, 2005. D. 11 at 4. Samuel also noted his desire to "add additional exhibits . . . in the event the [C]ourt decides to treat [Bonnie]'s motion as a motion for summary judgment." D. 11 at 4 n.1.

After hearing oral argument on the motion to dismiss, the Court took the matter under advisement.

## V. Discussion

### A. Judicial Notice

The Court first addresses the multitude of documents outside the pleadings submitted by the parties to the Court. "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, when "a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). Additionally, the Court may consider "matters susceptible to judicial notice," Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005), including "documents submitted [that] are part of the public record . . . without converting the motion to dismiss into a motion for summary judgment." Santiago v. Bloise, 741 F.Supp.2d 357, 361 (D. Mass. 2010).

Judicial notice is not the ordinary approach courts take towards finding facts; "the usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily

6

consisting of testimony of the witnesses," United States v. Bello, 194 F.3d 18, 23 (1st Cir. 1999) (quoting Fed. R. Evid. 201, Advisory Committee's note), but "[i]f particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary." Id. at 23. "A high degree of indisputability is an essential prerequisite." Id. (emphasis in original). Pursuant to Fed. R. Evid. Rule 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Bello, 194 F.3d at 23 (quoting Fed. R. Evid. 201(b)).

Here, many of the documents submitted by the parties appear to be deposition material that was developed as part of the discovery process associated with Samuel and Barbara's divorce proceedings. See D. 7-1; D. 7-8; D. 7-9; D. 11-1 at 2, 4, 6. Samuel has asserted, D. 11 at 4 n.1, that these excerpts were not admitted as exhibits in that proceeding and are not publicly accessible filings in that case. These documents are thus not "part of the public record" susceptible to judicial notice. Santiago, 741 F.Supp.2d at 361. Similarly, the complaint is neither "expressly linked to" nor "admittedly dependent on" the deposition testimony taken in Samuel and Barbara's divorce proceedings. Beddall, 137 F.3d at 17. It would be inappropriate for the Court to consider the deposition testimony offered by the parties without converting the instant proceeding into one for summary judgment rather than dismissal.

Nor will the Court consider the remaining documents proffered by Bonnie, D. 7-2 through 7-7, which appear to have been submitted as exhibits in the probate court proceedings regarding Samuel and Bonnie's divorce. Samuel's complaint does not mention - let alone expressly link to or admit its dependence upon - these documents. To the contrary, the documents are proffered by Bonnie to contradict (or to supplant via the statute of frauds) the complaint's factual assertion that

7

Samuel gave Bonnie express oral instructions to use his real estate and securities holdings to "take care" of Barbara during her lifetime and of Brian thereafter. Whether or not Bonnie interprets the import of these documents correctly- a question the Court need not reach at this time - it is clear that the Court cannot treat these documents as "merged" into the complaint. Beddall, 137 F.3d at 17. While a court may take judicial notice of open testimony in state court proceedings, see LoCicero v. Leslie, 948 F. Supp. 10, 11-12 (D. Mass. 1996), here, the materials in question are exhibits rather than witness testimony and, more importantly, there is some controversy about the exhibits between the parties since the parties dispute whether the materials were in fact submitted to the state court. Further, Samuel contends that one of the documents, the August 27, 1999 letter to Legg Mason containing Samuel's signature, D. 7-7 at 2, was at least partly forged.

Two of the documents submitted by Bonnie - the two quitclaim deeds apparently entered with a county Registry of Deeds, D. 7-1 and 7-2 - present a slightly more compelling case for judicial notice, since they may be judicially noticeable by other means. See, e.g., McKenna v. Wells Fargo Bank, N.A., 2011 WL 1100160, at *1 n.6 (D. Mass. Mar. 21, 2011) (taking judicial notice of mortgage "because it is recorded in the Barnstable [County] Registry of Deeds"). However, because Samuel has explicitly stated his desire to file additional documents with the Court should the Court's resolution of this case turn on more than the four corners of Samuel's complaint, D. 11 at 4 n.1, the Court declines Bonnie's invitation to take judicial notice of the quitclaim deeds. Instead, the Court will follow "the usual method of establishing adjudicative facts" either through the parties' positions at summary judgment that certain facts are undisputed or "through the introduction of evidence" at trial. Bello, 194 F.3d at 23 (quoting Fed. R. Evid. 201, Advisory Committee's note).

Accordingly, the Court will neither take judicial notice of the materials outside the pleadings submitted by the parties nor convert this proceeding into a summary judgment proceeding per Rule

12(d). Instead, the Court will rule on Bonnie's Rule 12(b)(6) motion to dismiss based on the pleadings alone.

**B. Prima Facie Case for Breach of Fiduciary Duty**

Bonnie argues that Samuel's verified complaint, on its face, does not support a plausible claim for breach of fiduciary duty. Under Massachusetts law, the essential elements of a breach of fiduciary duty claim are 1) existence of a fiduciary duty arising from a relationship between the parties; 2) breach of that duty; 3) damages; and 4) a causal relationship between the breach and the damages. Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 164 (1999). To create an oral trust sufficient to impose a fiduciary duty on a would-be trustee, "[n]o particular form of words is necessary but the words employed must unequivocally show an intention that the legal estate be vested in one person to be held in some manner or for some purpose on behalf of another." Cooney v. Montana, 347 Mass. 29, 34-35 (1964).

On its face, Samuel's verified complaint alleges a plausible claim for breach of fiduciary duty. Specifically, it alleges that Samuel twice orally instructed Bonnie to "take care" of Barbara and Brian, once when Samuel assigned Bonnie a general power of attorney, D. 1 at ¶ 7, and once when he transferred the Chelsea parcels to Bonnie and Barbara, D. 1 at ¶ 8, which is sufficient to constitute a plausible allegation that Samuel created an oral trust sufficient to impose a fiduciary duty on Bonnie as trustee; it alleges further that Bonnie breached this duty when she denied holding any assets in trust for Samuel and refused to provide Samuel with an accounting, D. 1 at ¶¶ 18-19; and finally it alleges damages. D. 1 at ¶ 22. These allegations, taken together and treated as true for the purposes of this motion, are sufficient to permit the plausible inference that Samuel's alleged damages were caused by Bonnie's handling of alleged trust properties as if they were not subject

9

to a trust. Bonnie's motion to dismiss cannot be granted on the ground that the verified complaint fails to state a plausible prima facie case for breach of fiduciary duty.

### C. Statute of Limitations

Bonnie argues next that Samuel's claim is time-barred. "Breach of fiduciary duty is a cause of action in tort that is governed by [Mass.] G[en]. L. c. 260, § 2A, which provides for a three-year period of limitation." Lattuca v. Robsham, 442 Mass. 205, 213 (2004). When an action is brought against a trustee or a fiduciary, the "cause of action does not accrue until the trustee [or the fiduciary] repudiates the trust and the beneficiary has actual knowledge of that repudiation." Lattuca, 442 Mass. at 213 (quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 518 (1997)). Here, Samuel asserts that even though he knew in 2002 that Barbara had allegedly forged his name on transfer documents and transferred the securities he jointly owned with Barbara into the separately controlled Barbara/Bonnie Account, D. 1 at ¶ 14, and that he knew at an unspecified time that Bonnie had sold the Chelsea properties, D. 1 at ¶ 17, he assumed that Bonnie's involvement with this conduct was consistent with his oral instructions regarding the trust and he did not have actual knowledge to the contrary until Bonnie repudiated the trust on June 20, 2008. D. 1 at ¶ 19. Whether these factual allegations will survive the crucible of discovery is not before the Court at this time. Taking these allegations as true, as the Court must on a motion to dismiss, the three-year window within which Samuel was permitted to file his breach of fiduciary duty claim opened on June 20, 2008, and did not close until June 19, 2011; his complaint was filed on March 22, 2011, within that window. Taking the facts alleged in the complaint as true, Samuel's claim is not time-barred.

### D. Statute of Frauds

Finally, Bonnie argues that Samuel's claims are barred by the Massachusetts statute of frauds under which agreements concerning the conveyance, sale or lease of property, and agreements establishing a legacy trust, must be in writing to be legally enforceable. Mass. Gen. L. c. 259, §§ 1(fourth) (real property), 5 (legacy gift); Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709 (1992) (real property); Hiller v. Hiller, 76 Mass. App. Ct. 1127 (Table) (2010) (testamentary gift). Bonnie's arguments on this point are based entirely on the documents she attached to her memo in support of her motion to dismiss, which are not properly before the Court at this time, as discussed above; Bonnie is free to renew her statute of frauds argument if and when those documents are properly available for the Court's consideration.[1] Whether Samuel's claim is in fact barred by the statute of frauds is a question best answered at summary judgment or at trial on the basis of discovered facts, not at this stage on the pleadings.

## VI. Conclusion

For the reasons discussed above, the motion to dismiss is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[1] The Court notes that each authority offered by Bonnie in support of her statute of frauds argument was resolved after discovery had been made available and not on a motion to dismiss. See, e.g., Harrington v. Stop & Shop Supermkt. Co., 70 Mass. App. Ct. 1116 (Table) (December 18, 2007) (resolved on summary judgment); Schwanbeck, 412 Mass. at 704 (resolved after bench trial); Hiller, 76 Mass. App. Ct. 1127 (Table) (resolved on summary judgment); Beaver v. Raytheon Mfg. Co., 299 Mass. 218, 218 (1938) (resolved after jury trial); Simon v. Simon, 35 Mass. App. Ct. 705, 706 (1994), review denied, 417 Mass. 1103 (1994) (resolved in part on summary judgment and in part after jury trial); Ryan v. Ryan, 419 Mass. 86, 86 (1994) (resolved in part on summary judgment and in part after jury trial).