UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL BERKOWITZ, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 11-10483-DJC |
| ) | |
| BONNIE BERKOWITZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                              September 20, 2013

### I.   Introduction

Plaintiff Samuel Berkowitz ("Samuel") has filed this lawsuit against Defendant Bonnie Berkowitz ("Bonnie")[1] alleging breach of fiduciary duty. D. 1. Bonnie has moved for summary judgment. D. 25. For the reasons stated below, Bonnie's motion for summary judgment is DENIED.

### II.  Burden of Proof and Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect

---

[1] The Court shall refer to the Defendant as "Bonnie" as she was named in the pleadings and throughout the parties' papers, although it understands that the correct spelling of her name is "Bonni." D. 25 at 1.

1

the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

The movant, Bonnie who seeks summary judgment on four of her affirmative defenses, bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets her burden, the non-moving party may not rest on the allegations or denials in his pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### III. Background

#### A. Factual Background & Procedural History

Unless otherwise noted, these facts are undisputed. This is one-count breach of a fiduciary duty action. Samuel was diagnosed with cancer in 1995. D. 25-1 at 3;[2] D. 29 ¶ 1. On June 5, 1998, in an effort to set his affairs in order, Samuel gave a general power of attorney to his daughter, Bonnie. D. 25-1 at 3; D. 29 ¶ 1. On or about May 13, 1999, he conveyed his interest in three parcels of real estate in Chelsea, Massachusetts (the "Chelsea Properties") to Barbara[3] and Bonnie with "express oral instructions" to Bonnie that if Samuel were to die, she was to take care of her mother as necessary during her lifetime and share any remaining value of the assets transferred to her control with her brother. D. 25-1 at 3; D. 29 at ¶ 2.

---

[2] Bonnie incorporated her Statement of Facts into her Memorandum in Support of the Motion for Summary Judgment.

[3] Barbara is Samuel's former wife and Bonnie's mother.

Barbara and Bonnie engaged in a series of financial transactions in 1999 and 2000, the effect of which was to remove securities totaling in value of over $1 million from Samuel's control. D. 29 ¶¶ 3, 5; D. 25-1 at 4. Samuel has asserted that he first learned of these transactions in or about 2002, but believed that Barbara and Bonnie had made these transfers in furtherance of the oral trust and pursuant to the power of attorney. D. 29 ¶ 4.

Samuel filed for divorce from Barbara in 2003. D. 29 ¶ 8; D. 25-1 at 4. As part of these proceedings, Samuel signed and filed with the Massachusetts Probate and Family Court financial statements wherein Samuel neither asserted interests in the Chelsea Properties nor the securities. D. 25-1 at 4; D. 29 ¶ 21. Samuel has asserted, however, that his failure to do so was out of ignorance of the need to do so and a failure to scrutinize his attorney's work. D. 29 at ¶ 34. In addition, Samuel has asserted that Barbara also failed to list these assets in her financial disclosures. D. 29 ¶ 21. Samuel and Barbara settled the divorce proceedings by agreement. D. 25-1 at 5. Samuel has not had any direct communication with Barbara since the divorce and alleges that Bonnie sided with Barbara during the divorce. D. 25-1 at 4; D. 29 ¶ 9.

At some point, Samuel learned that Bonnie and Barbara sold the Chelsea Properties for approximately $1.7 million. D. 25-1 at 5; D. 29 ¶ 12. At depositions conducted during his divorce proceedings, Samuel claimed that Bonnie had "swindled" Samuel with regard to the properties and securities, D. 25-1 at 5; D. 29 ¶ 9, and therefore revoked his power of attorney in 2005. D. 29 ¶ 19; D. 25-1 at 5. Samuel asserts, however, that prior to 2008, he hoped that he and his daughter would reconcile. Id. ¶ 14.

According to Samuel, after receiving a request for an accounting Bonnie, through her counsel, repudiated holding any assets in trust on June 20, 2008. Id. ¶ 15. Samuel further asserts

that this was the first time that Bonnie had repudiated her alleged fiduciary obligations. D. 29 ¶ 14.

Samuel commenced this action on March 22, 2011. D. 1. Bonnie moved to dismiss the complaint on April 25, 2011, D. 6, but the Court denied that motion. D. 12. The parties proceeded with discovery. On February 11, 2013, Bonnie moved for summary judgment, alleging that Samuel's claims were barred by: (1) the statute of frauds; (2) the statute of limitations; (3) judicial estoppel; and (4) the doctrine of laches. D. 25. Samuel has opposed this motion. D. 28. In his Statement of Material Facts, Samuel alluded to a cross-motion for partial summary judgment. D. 29 ¶ 7. However, no such motion is before the Court at this time. After oral argument on Bonnie's motion for summary judgment, the Court took the matter under advisement. D. 33.

## IV.   Discussion

### A.   The Statute of Frauds is Not a Bar to This Action

In this diversity action, state law governs Bonnie's affirmative defense of the statute of frauds. See Groleau v. American Exp. Financial Advisors, Inc., No. 10-cv-190-JL, 2011 WL 4801361, at *4 n. 1 (D.N.H. October 11, 2011). The Massachusetts[4] statute of frauds provides in relevant part that:

> No action shall be brought:
>
> First, To charge an executor or administrator, or an assignee under an insolvent law of the commonwealth, upon a special promise to answer damages out of his own estate; [or].
>
> …

---

[4] The Parties do not dispute that Massachusetts law applies to this diversity action. See D. 25-1 at 6 (assuming Massachusetts law applies); D. 30 at 6 (same).

> Fourth, Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them;
>
> …
>
> Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

Mass. Gen. Laws c. 259, § 1.

Bonnie argues that both of these provisions bar Samuel's claim. First, she argues that Samuel's alleged interest in the Chelsea Properties falls within the scope of paragraph 4. D. 25-1 at 9 (citing Guarino v. Zyfers, 9 Mass. App. Ct. 874, 875 (1980)). Second, Bonnie argues that Samuel's alleged interest in the securities fall within the scope of paragraph 1 in that Samuel's allegations are "testamentary in nature." Id.

With respect to Bonnie's first argument, the Court disagrees. As a general matter, Bonnie is correct that a party seeking to enforce a contract pertaining to a conveyance of real property must produce evidence of a signed writing. Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 254 (2007) (citing Michelson v. Sherman, 310 Mass. 774, 775 (1942)). Nevertheless, a different statute applies to trusts concerning land. Mass. Gen. Laws c. 203, § 1 (stating that "[n]o trust concerning land, except such as may arise or result by implication of law, shall be created or declared unless by a written instrument signed by the party creating or declaring the trust or by his attorney").

One such trust that arises by implication of law is a resulting trust, to which "[t]he Statute of Frauds is inapplicable." Citizens Bank of Massachusetts v. Coleman, 83 Mass. App. Ct. 609, 615 n.7 (2013) (citing Mass. Gen. Laws c. 203, § 1); see Draper v. Draper, No. 03-00782, 2005 WL 1367180, at *2 (Mass. Super. Apr. 8, 2005) (noting that "it is well settled in the Commonwealth that the Statute of Frauds is not a defense to a claim of a resulting trust") (citing

5

Collins v. Curtin, 325 Mass. 123, 126 (1949)). "Because a resulting trust is not based on the existence of a promise to reconvey the property, it does not involve the enforcement of a contract, but instead the validation of the intent of the transferor. The court may therefore consider promises and agreements, oral or written, as well as the conduct of the parties, for the purposes of establishing a resulting trust." Coleman, 83 Mass. App. Ct. at 615 n. 7; see 22 Mass. Practice, Probate Law and Practice § 37.13 (2d ed.). The practical impact of a resulting trust is that the trustee holds the trust property for the benefit of the transferor or settlor. Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 577 n. 10 (2012) (quoting Restatement (Third) of Trusts § 7 (2003)). A transferor can establish the existence of a resulting trust only on proof that the transferor of property did not intend at the time of the conveyance that the transferee "should take a beneficial interest in the property by way of gift, settlement or advancement." Laezza v. Laezza, 360 Mass. 716, 717 (1972). "[T]he presumption that a gratuitous transfer to a family member is a gift may be overcome and a resulting trust may be imposed if it is established that (1) the intent of the transferor at the time of the transfer was not to convey the beneficial interest to the transferee, and (2) there was acquiescence on the part of the transferee." Coleman, 83 Mass App. Ct. at 616-17.

Here, the parties are in accord that there was no written agreement between Samuel and Bonnie. D. 29 ¶ 2; D. 25-1 at 11. Nevertheless, this does not mean Samuel is without recourse. Upon a showing at trial that: (1) Samuel did not intend to convey the beneficial interest in the Chelsea Properties at the time of the transfer; and (2) Bonnie acquiesced, the Court could imply a resulting trust in Samuel's favor. Coleman, 83 Mass App. Ct. at 616-17. Samuel has proffered admissible facts supporting both elements of a resulting trust. First, Samuel attests that his transfer of the Chelsea Properties was not an outright gift, as Bonnie contends, see D. 25-1 at 11,

but rather an express oral trust that did not amount to the transfer of the beneficial interest in the properties. D. 29 ¶¶ 4, 6. Second, Samuel alleges that Bonnie did not repudiate the oral trust for some time, and thus, acquiesced. Id. ¶ 14. In fact, Samuel relies upon the fact that there was no evidence of repudiation on Bonnie's part prior to 2008, nine years after Samuel alleges that he created the trust. See infra at IV.B. There is therefore a genuine dispute of material fact as to whether the Statute of Frauds is a viable defense as to Samuel's breach of fiduciary duty claim with respect to the Chelsea properties.

Bonnie's argument that the Statute of Frauds bars Samuel from recovering the securities at issue in this case does not fare any better. The provision of the Statute of Frauds upon which Bonnie relies addresses contracts or agreements to make or revoke wills or codicils. See, e.g., Ryan v. Ryan, 419 Mass. 86, 91 (1994); Downey v. Union Trust Co. of Springfield, 312 Mass. 405, 410 (1942). Yet, Samuel's agreement with Bonnie was not to make a will; to the contrary, Samuel has alleged the existence of an oral trust. D. 29 ¶ 4. Accordingly, the provision that Bonnie cites is inapplicable to this case.

Moreover, even if the Statute of Frauds did apply to an oral trust contemplating the settlor's death, the Statute of Frauds would not apply to the Court's imposition of a constructive trust. A constructive trust, like a resulting trust, arises by operation of law under circumstances "in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation or arose where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information." Meskell v. Meskell, 355 Mass. 148, 151 (1969) (citation omitted); see also Sullivan v. Rooney, 404 Mass. 160, 162-63 (1989) (affirming trial court's imposition of constructive trust over Statute of Frauds defense). In this case, there

are at least allegations of fraud. Samuel has described – and Bonnie does not appear to dispute – how Bonnie and Barbara engaged in a series of financial transactions aimed at diverting the securities. D. 29 ¶ 3; D. 25-1 at 3-4. According to Samuel's sworn allegations, these transactions involved the forgery of Samuel's signature. D. 29 ¶ 3. There is also evidence suggesting that Bonnie was unjustly enriched as Samuel attests that Bonnie, Brian and Barbara were all to benefit in the value of Samuel's assets. Id. ¶ 2. Accordingly, there are genuine disputes of fact as to each of the elements of a constructive trust, namely, (1) whether Bonnie was unjustly enriched by acquiring the securities; and (2) whether she obtained the property by fraud or in violation of a fiduciary relationship, all of which precludes summary judgment in Bonnie's favor as to whether the Statute of Frauds bars recovery.

### B. The Statute of Limitations Does Not Bar This Action

Bonnie has argued that the statute of limitations has run on Samuel's breach of fiduciary duty claim. She asserts that Samuel knew no later than 2005 that (1) Bonnie had sold the Chelsea Properties; and (2) Barbara and Bonnie had transferred over $1 million of securities into accounts that Samuel does not control. D. 25-1 at 7. This knowledge, Bonnie argues, caused the statute of limitations to accrue.

A claim for breach of fiduciary duty sounds in tort. Doe v. Harbor Schools, 446 Mass. 245, 254 (2006). The statute of limitations for tort actions in Massachusetts is three years. Mass. Gen. Laws. c. 260, § 2A. The statute of limitations for a claim of breach of fiduciary duty does not accrue "until the trustee repudiates the trust and the beneficiary has actual knowledge of that repudiation." Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 518 (1997) (emphasis in original). "A repudiation by the trustee must be open and notorious in order to start the operation of the statute." Stuck v. Schumm, 290 Mass. 159, 163 (1935). The beneficiary

must have actual knowledge of the trustee's intent to repudiate, which "must be manifested by 'a definitive expression' of an 'absolute and unconditional repudiation.'" March v. March, 62 Mass. App. Ct. 1109, at *2 (2004) (Table) (quoting Lattuca v. Robsham, 442 Mass. 205, 214 (2004)). For example, a trustee's "formal demand" followed by a beneficiary's "notice that no demand would be complied with" will cause the statute of limitations to accrue, while "[t]he statement of the defendant trustee that he had no money or his refusal to pay over a part of a trust fund for which in its entirety he must account to the administrator, in response to the request for payment made by one who had no right to make it or to compel payment" will not cause the statute of limitations to accrue. Stuck, 290 Mass. at 164-65.

Samuel attests that it was not until June 2008 (fewer than three years before he commenced this action) that Bonnie repudiated the existence of a trust upon a formal demand for an accounting from Bonnie. D. 29 at ¶¶ 14-15. In response, Bonnie has proffered facts demonstrating Samuel's knowledge of same as early as 2004 when "Samuel repeatedly averred that Bonnie had 'swindled' him regarding the Properties and Securities." D. 25-1 at 7. Moreover, Bonnie points to the fact that Samuel knew, perhaps as early as 2002, that Bonnie had converted the securities and the Chelsea Properties. Id. However, even if the Court could construe from these facts Samuel's "actual knowledge"[5] of Bonnie's subversion of her fiduciary

---

[5] Even if the statute of limitations was not tolled by any alleged fraudulent concealment on Bonnie's party because Samuel was aware of her transfers between 2002 and 2005, it still remains the case that the repudiation of trust did not come until 2008 and, therefore, this event began the three-year statute of limitations period. That is, contrary to Bonnie's assertions at oral argument, the fraudulent concealment and repudiation of trust doctrines are distinct. See Cohen v. State St. Bank & Trust Co., 72 Mass. App. Ct. 627, 637 (2008) (analyzing doctrines separately, but noting that the "actual knowledge standard" applies to both to toll the statute of limitations (internal citation omitted)). Accordingly, even if the doctrine of fraudulent concealment does not aid Samuel, this does not preclude him from demonstrating that Bonnie repudiated the alleged trust fewer than three years prior to the commencement of this action.

obligations, see Demoulas, 424 Mass. at 518, Bonnie has not identified a specific repudiation prior to 2008 under any definition, whether it be "open and notorious" or "a definitive expression of absolute and unconditional repudiation." Stuck, 290 Mass. at 163; March, 62 Mass. App. Ct. at 1109. At most, any repudiation was implied. Indeed, drawing these facts in the light most favorable to Samuel as the Court must in considering Bonnie's motion, it is possible that Samuel could have inferred from Bonnie's actions that she was merely consolidating or liquidating the Chelsea Properties and securities in furtherance of the express purposes of the trust, i.e., to generate funds to take care of Samuel's family. Accordingly, the Court declines to enter summary judgment in Bonnie's favor on this ground.

### C. Judicial Estoppel Is Not a Bar to This Action

Bonnie has asserted that judicial estoppel bars this action because Samuel now seeks to assert interests in the Chelsea Properties and the securities, despite the fact that during the divorce proceedings, Samuel failed to list these assets in his sworn financial disclosures. D. 25-1 at 13-14.

Judicial estoppel is an equitable doctrine. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). It precludes, under certain circumstances, parties from asserting inconsistent positions in two separate litigations. Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 640 (2005). Two "fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel." Id. First, the positions asserted in the first litigation must be "directly inconsistent" with the position asserted in the second litigation. Alternative System Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 33 (1st Cir. 2004). For two positions to be directly inconsistent in the context of judicial estoppel, they must be "mutually exclusive." Id. Second, the party

asserting the inconsistent position "must have succeeded in convincing the court to accept its prior position." Otis, 443 Mass. at 641. Courts have "decline[d] to identify a settlement as representing success for the purposes of judicial estoppel." See E. Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623 (1996). Although some courts have recognized a third factor, that the party asserting the inconsistent position must have received an "unfair advantage" from asserting the inconsistent position, "as a practical matter, where the first two components have been satisfied, this third factor is virtually certain to be present." Otis, 443 Mass. at 641.

Although Bonnie may be correct that Samuel's failure to identify assets as his own in one proceeding and attempt to take advantage of his interests in the same assets in a later proceeding are indeed "inconsistent" for the purpose of judicial estoppel, see Graupner v. Town of Brookfield, 450 F. Supp. 2d 119, 127 (D. Mass. 2006) (citing Howell v. Town of Leyden, 335 F. Supp. 2d 248, 251 (D. Mass. 2004) (nondisclosure of potential claims in bankruptcy court deprived creditors of access to a substantial potential asset, satisfying prerequisites of judicial estoppel)), it cannot be said that Samuel was "successful" in convincing the court in his divorce proceeding of his position, where the assets in question here were not even identified, much less the subject of any ruling about their ownership, and that matter was resolved not by dispositive ruling, but by settlement. D. 25-1 at 5. Moreover, it also "may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" Otis, 443 Mass. at 642 (quoting New Hampshire, 532 U.S. at 753). Here, Samuel has asserted that his failure to list the assets in question was the result of his failure to review carefully the financial statement filed on his behalf by his attorney. D. 29 ¶ 34; D. 30-31. All of these considerations militate against applying judicial estoppel, an equitable doctrine, here.

### D. The Doctrine of Laches Is Not a Bar to This Action

Bonnie's last argument is that the doctrine of laches precludes Samuel from pursuing his claim. "Laches is an equitable defense consisting of unreasonable delay in instituting an action which results in some injury or prejudice to the defendant." Case of Wadsworth, 461 Mass. 675, 690 (2012) (quoting Yetman v. Cambridge, 7 Mass. App. Ct. 700, 707 (1979)). Mere delay, even for "many years," does not constitute laches. March, 62 Mass. App. Ct. 1109, at *3 (quoting Porotto v. Fiduciary Trust Co., 321 Mass 638, 644 (1947) (declining to invoke laches despite 94-year delay)). Whether a party has engaged in unreasonable delay causing injury to the defendant is a question of fact. W. Broadway Task Force v. Boston Hous. Auth., 414 Mass. 394, 400 (1993).

In her motion for summary judgment on this issue, Bonnie has argued that Samuel has been aware of the facts underlying the lawsuit for at least eight years. D. 25-1 at 16. However, this alone does not decide the issue. Porotto, 321 Mass. at 644. The key issue is whether the delay is unreasonable and has caused injury to Bonnie.

As to injury, Bonnie makes two arguments. First, Bonnie points to the fact that she and Barbara expended funds to improve the Chelsea Properties and subsequently sold them to a bona fide purchaser. D. 25-1 at 17 (citing Vineberg v. Bissonnette, 548 F.3d 50, 57 (1st Cir. 2008)). These arguments are not persuasive. If Samuel prevails at trial, it is the proceeds – and not the Chelsea Properties themselves – that will be remitted, less any funds expended to improve the properties to avoid Samuel being unjustly enriched. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 66 (1st Cir. 2009) (stating that "[w]hen a defendant has received a benefit that is significantly greater than the plaintiff's loss and justice so requires, 'the defendant may be under a duty to give the plaintiff the amount by which he has been enriched'")

(citation omitted)), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009). Second, Bonnie argues that the parties' memories have faded on numerous material issues. D. 25-1 at 17. Certainly, courts applying Massachusetts law have determined that faded memories can constitute injurious delay. See Giese v. Pierce Chemical Co., 29 F. Supp. 2d 33, 38 (D. Mass. 1998) (noting that evidentiary prejudice can result from the fading of memories). However, for the reasons discussed above, Samuel has put forth evidence that the repudiation of the trust by Bonnie did not occur until 2008. That is, it remains a disputed issue of fact that the repudiation and Samuel's knowledge of same came less than three years before he initiated this litigation which does not amount to unreasonable delay. In considering the defense of laches, the Court "must also consider any justification offered by the plaintiff for its delay." Id. (giving other litigation, negotiations with the accused, illness under limited circumstances, egregious behavior by the accused and other examples of such justifications). In addition to contending that the repudiation of the trust did not come until 2008, Samuel also attests that he did not want to needlessly embroil the family in litigation and had continued to hope over the years that Bonnie would "come around," D. 29 ¶¶ 8, 9, 14, the inference of which was that his delay in pursuing legal action was intended to increase the possibility that the parties could settle their dispute amicably.

Accordingly, as to the reasonableness of the delay, the Court cannot say on this record that there is no dispute of material fact as to whether laches should preclude relief.

## V. Conclusion

For the foregoing reasons, the Defendant's motion for summary judgment, D. 25, is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge
