UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| SAMUEL BERKOWITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-10483-DJC |
| | ) | |
| BONNIE BERKOWITZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER

**CASPER, J.**  March 30, 2015

## I. Introduction

Defendant Bonnie[1] Berkowitz ("Bonnie") has moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, D. 79, 89, 107, or in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59, D. 106. Following a trial, a jury returned a verdict in favor of Plaintiff Samuel Berkowitz ("Samuel"). D. 92. Bonnie alleges she was prejudiced by Samuel's trial strategy, D. 106 at 1-2, and also that Samuel's case was legally deficient and barred by a number of affirmative defenses. D. 107 at 2. For the reasons discussed below, Bonnie's motions are DENIED.

---

[1] Bonnie's counsel notes the correct spelling of her name is "Bonni" but continues with the spelling used in earlier pleadings. D. 106 at 1. The Court continues with the previous spelling for consistency.

1

## II. Standard of Review

Fed. R. Civ. P. 59(a)(1)(A) allows a court to "grant a new trial on all or some of the issues—and to any party" following a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Generally, a district court may order a new trial "only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." Crowe v. Marchand, 506 F.3d 13, 19 (1st Cir. 2007) (quoting Casillas–Díaz v. Palau, 463 F.3d 77, 81 (1st Cir. 2006)). "[A] district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice," and the Court may independently weigh the evidence presented at trial. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (quoting Kearns v. Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir. 1988)). "[T]he trial judge's discretion, although great, must be exercised with due regard to the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial." Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996) (quoting Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir. 1982)). That is, a judge "cannot displace a jury's verdict merely because he disagrees with it or would have found otherwise in a bench trial." Id. (quoting Milone v. Moceri Family, Inc., 847 F.2d 35, 37 (1st Cir. 1988).

Fed. R. Civ. P. 50 provides that a party may file for judgment as a matter of law when "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of the non-moving party. Fed. R. Civ. P. 50(a)(1); Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010). A movant faces an "uphill battle," as "[c]ourts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." T G

2

Plastics Trading Co., Inc. v. Toray Plastics (Am.), Inc., 775 F.3d 31, 38 (1st Cir. 2014) (alteration in original) (citation omitted). Conversely, "if instead fair-minded person could draw different inferences from the evidence presented at trial, the matter is for the jury." Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002). Accordingly, the "court 'may not consider the credibility of witnesses, resolve conflicts in testimony or evaluate the weight of the evidence.'" Barkan, 627 F.3d at 39. A non-moving party with the burden of proof, however, must "present 'more than a mere scintilla' of evidence and may not rely on conjecture or speculation" to defeat a motion for judgment as a matter of law. Id. (quoting Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir. 1996)).

## III. Background

### A. **Factual Background**

The following facts are as drawn from the trial testimony. Samuel was diagnosed with cancer in 1994 and underwent a life-saving operation at the end of that year. D. 107-3 at 103. Following his operation, Samuel was bedridden for twelve to sixteen hours per day. Id. Shortly thereafter, Samuel decided to move to Florida to focus on his health. Id. On or about May 13, 1999, he conveyed his interest in three parcels of real estate in Chelsea, Massachusetts (the "Chelsea Properties") to his wife, Barbara, and to his daughter, Bonnie, so that they could manage the properties while he was away. Id. at 106; 111-112. On June 5, 1998, Samuel gave a general power of attorney to Bonnie, as he trusted her to handle his affairs while he was ill. Id. at 104-111.

Barbara testified that on November 14, 2000, she and Bonnie sold the Chelsea properties for $1.7 million, each receiving 50 percent of the sales proceeds. Id. at 43-46. Samuel testified that Barbara and Bonnie engaged in a series of financial transactions in 1999-2000, the effect of which was to remove securities of approximately $1 million from his control. D. 107-4 at 20.

Specifically, Samuel testified that Bonnie forged his signature on a document transferring the securities to an account she held with her mother. Id. at 11; D. 109-5. Samuel also testified that Bonnie never accounted for the securities, D. 107-4 at 22, or told him that the securities were hers. D. 107-3 at 114-115.

### B. Procedural History

Samuel commenced this action on March 22, 2011. D. 1. Bonnie moved to dismiss the complaint on April 25, 2011, D. 6, and the Court denied the motion. D. 12. The parties proceeded with discovery. On February 11, 2013, Bonnie moved for summary judgment, alleging Samuel's claims were barred by: (1) the statute of frauds; (2) the statute of limitations; (3) judicial estoppel; and (4) the doctrine of laches, D. 25, which the Court denied, D. 34. Following a trial, a jury returned a verdict in Samuel's favor, finding that (1) Bonnie owed Samuel a fiduciary duty and the fiduciary duty arose from a resulting or constructive trust, (2) Bonnie breached that duty, (3) Samuel suffered damages, (4) Bonnie's breach caused Samuel damages, (5) Samuel did not unreasonably delay in instituting the action and that there was no injury or delay and prejudice to the Bonnie, (6) Bonnie had not shown that she repudiated any trust prior to March 22, 2008 and (7) Samuel suffered damages for breach of fiduciary duty in the amount of $540,770.50. D. 92. At the close of Samuel's case, Bonnie moved for judgment as a matter of law, D. 79, and again at the close of evidence. D. 89. Following the verdict, Bonnie moved for a new trial, D. 106, and renewed her prior motions for judgment as a matter of law, D. 107. The Court heard the parties on the motions on February 24, 2015 and took the matter under advisement. D. 116.

## IV.     Discussion

### A.     Whether A New Trial is Warranted

Fed. R. Civ. P. 59 "provides a means of relief in cases in which a party has been unfairly made the victim of surprise.  The surprise, however, must be 'inconsistent with substantial justice 'in order to justify a grant of a new trial.'"  Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 287-88 (1st Cir. 1993) (quoting Conway v. Chem. Leaman Tank Lines, Inc., 687 F.2d 108, 111-12 (5th Cir. 1982)).  This application of the rule is generally limited "to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify."  Id.

Bonnie seeks a new trial based on unfair surprise because, she contends, "only during trial did the plaintiff's stock securities claim 'morph' into a forgery/conversion claim."  D. 106 at 8.  Specifically, Bonnie alleges the complaint "did not allege that the defendant forged or converted the plaintiff's stock securities" and that "at no time was she ever put on notice that the plaintiff was going to opine that she forged his name to stock transfer documents."  Id. (emphasis in original).  Bonnie points to several sections of Samuel's deposition in which he attributed his signature on the transfer documents to his ex-wife, Barbara.  D. 106-3 at 3-4.  Bonnie concludes she was prejudiced at trial because, despite the Court's refusal to allow an amendment to add a forgery claim at the conclusion of Samuel's case, Samuel's counsel argued that Bonnie had forged his signature on the transfer documents.  Id.

The Court cannot conclude Bonnie lacked notice of the forgery allegations or that she was prejudiced by Samuel's trial strategy.  Samuel alleged in his complaint that his name was forged on the transfer documents and did not confine the allegations to Barbara, Bonnie's mother.  D. 1 ¶¶ 9-13 (providing that "Plaintiff's ex-wife signed her name and allowed Plaintiff's

5

name to be forged to an account transfer document. . ."). In deposition, Samuel testified that he thought Barbara forged the documents, but that he was not sure, explaining in one deposition "yeah, I have a feeling. I will know for sure, if I call the writing experts in," D. 106-3 at 4, and in another, when asked whether Barbara signed his name to the documents, he replied: "I wouldn't swear to it, but I certainly think so." Id. at 8. Bonnie was asked multiple times in deposition whether she forged her name to the transfer documents and testified "not that I recall" to many of these inquiries, indicating that the issue could reoccur at trial. D. 108-6 at 2-10. Counsel for Bonnie had an opportunity to cross examine Samuel as to his familiarity with her handwriting and did so, which the jury could freely evaluate. D. 108-3 at 56-58. Further, Bonnie herself did not testify that she had not forged his name.

Samuel's counsel thus did not present a "completely new issue" rendering the resulting judgment "inconsistent with substantial justice." See Incase Inc. v. Timex Corp., 488 F.3d 46, 59 (1st Cir. 2007) (affirming denial of judgment as a matter of law based and finding no surprise "inconsistent with substantial justice" when defendant had ample opportunity to cross-examine and present argument to the jury); Perez-Perez, 993 F.2d at 287-88. Although unfair surprise may warrant an application of Rule 59, such application is triggered when a party advances a "novel theory of liability," which the opposing party then lacks the opportunity to properly address. See Perez-Perez, 993 F.2d at 287 (holding a party was prejudiced by expert's introduction of novel theory of liability such that defense counsel was denied the opportunity to effectively cross-examine, review records, investigate the party's physical condition, speak to primary care physician or arrange for a rebuttal expert); Rivera-Adams v. Wyeth, No. 03-1713 JAF, 2011 WL 346556, at *4 (D.P.R. Feb. 4, 2011) (finding no unfair surprise when plaintiff allegedly falsely testified because defense counsel "fully explored the alleged inconsistencies

6

during cross-examination" and the "jury heard and understood the conflict with the medical records, and was entitled to decide the weight and credibility" of the testimony).

**B.** **Judgment as a Matter of Law**

*1.* *There Was Sufficient Evidence To Find a Fiduciary Duty and a Breach*

Bonnie contends no reasonable jury could have found a resulting or constructive trust as to the securities at issue in this case, because the "only exhibit admitted into evidence regarding the alleged fiduciary relationship between the plaintiff and the defendant was the Power of Attorney given by the plaintiff to the defendant," "[t]here was no evidence at trial of the Power of Attorney being utilized in any capacity by the defendant," and "[t]he only other evidence of a fiduciary relationship existing between the plaintiff and defendant as regarding the stock securities would be that the defendant forged the plaintiff's name to a Legg Mason stock transfer form." D. 107 at 8. Bonnie contends Samuel "undoubtedly created his testimony for trial and although normally the credibility of a witness is for the jury to determine in this instance the testimony of the plaintiff was so plainly false as to warrant same to be disregarded by the Court." Id.

As to the Rule 50 motion, the Court must look at whether there was a legally sufficient basis for the verdict, Barkan, 627 F.3d at 39, and must view the evidence, and draw all reasonable inferences, "in the light most favorable to the party against whom the motion for directed verdict is made." Cochrane v. Quattrocci, 949 F.2d 11, 12 n. 1 (1st Cir. 1991). Here, there was evidence upon which the jury could conclude Bonnie owed Samuel a fiduciary duty and that she breached that duty, particularly given that Samuel, as the non-moving party, is entitled to "'the benefit of all inferences which the evidence fairly supports, even though

7

contrary inferences might reasonably be drawn.'" Id. (quoting Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696 (1962)).

A resulting trust is created when a party transfers property absent an intention to make an outright gift, In re Valente, 360 F.3d 256, 263 (1st Cir. 2004) (citing Restatement (Second) Trusts §404), whereas a constructive trust may be imposed to avoid unjust enrichment in the case of fraud or violation of a fiduciary duty. Kelly v. Kelly, 358 Mass. 154, 156 (1970). As to the fiduciary relationship and the utilization of the power of attorney, Samuel testified that he gave Bonnie the power of attorney while he was ill because he trusted her to handle his affairs. D. 107-3 at 104-111. Bonnie testified that she received the power of attorney, D. 108-2 at 61-63, and that she previously used it at least on one occasion, to obtain a duplicate copy of the title to Samuel's car in connection with her parents' divorce. Id. at 63-65. The jury heard Samuel's testimony that Bonnie forged the signature on the form to transfer the securities to herself and her mother, D. 107-4 at 11-12, and also examined the transfer form itself. D. 109-5. Additionally, the jury also heard a portion of Bonnie's previous deposition in which she explained that she later decided, without her mother, to transfer the securities from a Legg Mason account into a Morgan Stanley account. D. 107-3 at 98. The jury also heard Samuel's testimony that Bonnie never accounted for the securities, D. 107-4 at 22, or told him that securities were hers. D. 107-3 at 114-115. Additionally, the jury was able to consider Bonnie's testimony, particularly her repeated failure to recall whether she forged Samuel's signature on several financial documents. Id. at 79-93.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986). A jury could have determined from the evidence at trial that Bonnie either had knowledge of or improperly transferred the securities into her name in violation of her duties under the power of attorney. The power of attorney created a fiduciary relationship requiring Bonnie to act in furtherance of Samuel's fiduciary interests and also to notify him of material facts relevant to these interests. See Spritz, 305 Mass. at 172; Gagnon, 39 Mass. App. Ct. at 154. As Samuel contends, that "both as attorney-in-fact and as constructive or resulting trustee," the jury could have found, based on the evidence at trial, that Bonnie "breached her fiduciary duty to Samuel by conveying the securities at issue in this case to herself and failing to account." D. 109 at 13.

### 2. *The Claim Is Not Barred By the Statute of Limitations*

Bonnie contends Samuel's claim is barred by the three-year statute of limitations applicable to Massachusetts tort actions pursuant to Mass. Gen. L. c. 260, § 2A. D. 107 at 13-14. The statute of limitations in a breach of fiduciary duty action does not toll "until the trustee repudiates the trust and the beneficiary has actual knowledge of that repudiation." Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 518 (1997) (emphasis omitted). The Court previously denied summary judgment to Bonnie on this issue, D. 34 at 8-10, because it could not conclude Bonnie engaged in the necessary "open and notorious" repudiation of the trust, Stuck v. Schumm, 290 Mass. 159, 163 (1935), "manifested by 'a definitive expression' of an 'absolute and unconditional repudiation.'" March v. March, No. 03-P-1428, 2004 WL 2452705, at *2 (Mass. App. Ct. Nov. 2, 2004) (quoting Lattuca v. Robsham, 442 Mass. 205, 214 (2004)). Because it was "possible that Samuel could have inferred from Bonnie's actions that she was merely consolidating or liquidating the Chelsea Properties and securities in furtherance of the

9

express purposes of the trust, i.e., to generate funds to take care of Samuel's family," there remained an issue of material fact before the trial. D. 34 at 10.

At trial, Samuel testified that he added Barbara's name to all of his securities as a result of his health, D. 107-3 at 104, that he gave Bonnie a power of attorney so that she could handle his affairs while he was in Florida recuperating from his illness, id. at 106, that he was aware of "some stocks and securities being transferred to Bonnie through her mother" but that Bonnie had never laid claim to the securities "outright." id. at 114-15. Although Bonnie contends Samuel's actual knowledge of repudiation may be inferred from the documents provided in conjunction with his divorce, this argument was previously rejected by the Court in its summary judgment order, because Bonnie failed to identify a specific repudiation prior to 2008 when her counsel provided Samuel with a letter indicating she would not provide an accounting. D. 34 at 8-10.

At trial, the jury heard that Samuel filed for divorce from Barbara in 2003. D. 107-3 at 47. As part of these proceedings, Samuel signed and filed with the Massachusetts Probate and Family Court financial statements wherein Samuel neither asserted interests in the Chelsea Properties nor the securities. D. 107-4 at 95-96. Samuel testified that the securities were listed in Barbara and Bonnie's names at the time of the divorce, id. at 87, and his attorney testified that while he was aware Samuel had an interest in the securities, he did not believe he was obligated to list them on the financial disclosure forms because Samuel's interest was in Bonnie's name at the time. Id. at 104-05. Although Bonnie contends Samuel knew no later than 2003 that a repudiation occurred, she did not testify as to a specific act of repudiation, and the jury could have concluded that that the financial disclosures were filed in accordance with the testimony cited above. Based on the evidence presented at trial, the jury could have found that she had not

repudiated any trust prior to March 22, 2008, three years prior to the filing of this lawsuit, and the Court cannot conclude the claim is barred by the statute of limitations.

### 3. The Claim Is Not Barred By Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639-40 (2005) (quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998)). While "there is no mechanical test," for judicial estoppel to apply, generally, the position asserted in the previous litigation must be "directly inconsistent" with that asserted in the subsequent litigation, and secondly, "the responsible party must have succeeded in persuading a court to accept its prior position." Alternative Sys. Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (citations omitted); see E. Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623 (1996) ("declin[ing] to identify a settlement as representing success for the purposes of judicial estoppel").

Bonnie notes that financial records from Samuel and Barbara's divorce were entered into evidence at trial, documents in which Samuel did not mention of the securities. D. 107 at 16. Bonnie concludes that because the probate court accepted Samuel's "sworn declaration that he did not have any interest in the subject Securities as of 2003, 2004, and 2005," his claim here is barred by judicial estoppel. Id. at 16-17  The Court previously considered and rejected this argument in its prior order denying summary judgment, noting that while it was perhaps inconsistent that Samuel did not list the securities in his divorce proceedings, he was not "successful" in that action in applying the position he asserts here, as the matter was settled. D. 34 at 11. Further, the Court also explained that judicial estopped is inappropriate when based upon inadvertence or mistake. Id. (quoting Otis, 443 Mass. at 642). At trial, there was testimony

from Samuel and his attorney that the securities were listed in Barbara and Bonnie's names at the time of the divorce, D. 107-4 at 91, 96, and the attorney, who was responsible for preparing the documents relating to the divorce, testified that he was aware Samuel had an interest in the securities, but that he did not believe he was obligated to list the securities on the financial disclosure forms because his interest at that time was in Bonnie's name. Id. at 104-05. Accordingly, applying judicial estoppel remains inappropriate here.

### 4. *The Claim Is Not Barred By Laches*

Finally, Bonnie contends this action is barred by laches, D. 107 at 18-19, "an equitable defense consisting of unreasonable delay in instituting an action which results in some injury or prejudice to the defendant." Case of Wadsworth, 461 Mass. 675, 690 (2012) (quoting Yetman v. Cambridge, 7 Mass. App. Ct. 700, 707 (1979)). To establish the defense in the context of a breach, "the asserting party must establish both actual knowledge and prejudice." The Woodward Sch. For Girls, Inc. v. City Of Quincy, 469 Mass. 151, 179 (2014) (internal citations omitted). Whether a party has engaged in unreasonable delay causing injury to the defendant is a question of fact. W. Broadway Task Force v. Boston Hous. Auth., 414 Mass. 394, 400 (1993).

While Bonnie argues Samuel had actual knowledge based on the divorce proceedings, "[c]onstructive knowledge is insufficient, as is [m]ere suspicion or mere knowledge that the fiduciary has acted improperly." The Woodward Sch. For Girls, Inc., 469 Mass. at 179 (internal citation omitted). "[A] plaintiff is not required to conduct "an independent investigation" to determine if a breach of fiduciary duty has occurred." Id. (citation omitted). At trial, Bonnie testified that she and Samuel had not spoken following the divorce proceedings. D. 107-5 at 35. While this raises the inference that Samuel had knowledge, Bonnie's laches defense fails as to the demonstration of unreasonable delay causing injury. Bonnie provides, "[d]uring the trial of

the matter it became abundantly clear that records had been lost or destroyed, memories had faded, and the gist and nature of the action wasn't able to be properly ascertained, all to the detriment of the defendant." D. 107 at 18.  Yet at trial the only individuals who repeatedly failed to recall material events were Bonnie and her mother.  As to prejudice, Bonnie provides "she "was not able to obtain the trial transcript (recording) of the divorce trial proceeding between the plaintiff and Barbara Berkowitz as same had been destroyed, several old divorce deposition transcripts could not be located, and numerous business records regarding the stock securities were lost or destroyed."  Id.  There was no evidence demonstrating as such, and the jury supportably found that Samuel did not engage in prejudicial delay causing injury to Bonnie.

## V. Conclusion

For the foregoing reasons, Bonnie's motions for a new trial, D. 106, and for judgment as a matter of law, D. 79, 89, 107, are DENIED.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge